T.C. Summary Opinion 2010-151


UNITED STATES TAX COURT


KELLY LYNN MADSEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18467-08S.                   Filed October 7, 2010.


Kelly Lynn Madsen, pro se.

<u>Lisa M. Oshiro</u>, for respondent.


MORRISON, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

On April 23, 2008, respondent (the Commissioner of Internal Revenue, whom we refer to here as the IRS) mailed petitioner Kelly Lynn Madsen a notice of deficiency for the taxable years 2004 and 2005 determining the following deficiencies in income taxes and accuracy-related penalties:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 2004 | $4,166 | $833 |
| 2005 | 7,431 | 964 |

Ms. Madsen filed a timely petition with this Court, and a trial was held in Seattle, Washington, on June 23, 2009. After concessions by the IRS,[2] the issues we must decide are, for both

---

[2]The IRS has conceded that Madsen's home was in Bellingham, Washington, in 2004 and 2005 for purposes of determining travel away from home. See sec. 274(d)(1) (providing that deductions for traveling expenses, including meals and lodging while away from home, are deductible only if the expenses are substantiated by evidence other than the taxpayer's own statements). The IRS has also conceded that she is entitled to a vehicle mileage deduction of $1,575 in 2004 and $6,175 in 2005. It also has conceded that the following expenses Madsen incurred in 2004 are deductible: Lodging expenses of $5,501 (allocable to work days spent performing repairs and maintenance, described below), union dues of $818, training expenses of $100 (including an EPA Refrigeration Technician Certificate of $50), cell phone expenses of $600, tool expenses of $90, rental car expenses of $61, overweight baggage fees of $50, transportation expenses of $238, and tax preparation fees of $100. The IRS has conceded that the following expenses Madsen paid in 2005 are deductible: Lodging expenses of $2,133 (allocable to work days spent performing repairs and maintenance, described below), union dues of $908,

(continued...)

of the tax years 2004 and 2005: (1) whether Madsen is a transportation industry worker, (2) the amounts of her deductions for meals and incidental expenses for three categories of work days (training, vaccinations, performing repairs and maintenance), (3) for each day before the day her tugboat departed on a voyage, the amount of the deduction allowed for lodging expenses and meals and incidental expenses, (4) for days spent in harbor and at sea, whether Madsen's deductions for meals and incidental travel expenses should be equal to her actual grocery expenses or to the special daily rates for transportation workers (and, if the special daily rates are used, whether the special daily rate should be reduced to $3 per day because Madsen received free meals on board the tugboats), (5) whether the deduction for meals and incidental expenses for each day that Madsen was partly at home and partly traveling (i.e., Madsen's first and last days of travel away from her home) should be prorated by reducing the deduction to 75 percent, (6) whether the

---

[2](...continued)
licensing fees of $215, passport photo expenses of $24, parts expenses of $1,069, transportation expenses of $904, safety supply expenses of $446, postage expenses of $84, laundry expenses of $182, and tax preparation fees of $70. Additionally, as we explain below, we find that the IRS has conceded the deductibility of lodging expenses of $1,198 for 2004 and $759 for 2005 for Madsen's days spent in port before departure on work-related voyages. Madsen has conceded that a $9,461 distribution from a retirement fund in 2005 is includable in her income for that year. The IRS concedes that the distribution is not subject to the sec. 72(t) additional tax.

increased allowable percentage for the deduction of food or beverages consumed while away from home for individuals subject to the federal hours-of-service limitations applies, (7) the amounts of deductions for other expenses, and (8) whether Madsen is liable for the section 6662(a) accuracy-related penalties.

## Background

The parties have stipulated some of the facts. These stipulated facts are adopted by the Court as factual findings. Madsen resided in the State of Washington at the time she filed her petition.

### 1. Madsen's Job and Her Duties Generally

Madsen was employed by Foss Maritime Co. in 2004 and 2005 as a chief engineer aboard its tugboats. She was licensed by the U.S. Coast Guard to perform duties as a master of steam or motor vessels and as a chief engineer during both years. She was also certified to perform navigational and engineering watches[3] under the International Convention on Standards of Training, Certification, and Watchkeeping for Seafarers, 1978, as amended, during the tax years at issue. On board Foss's tugboats, her job was to perform engineering watches, in shifts with other boat employees, to ensure the proper running of the engine room.

---

[3]The Coast Guard regulations define the term "watch" to mean "the direct performance of vessel operations, whether deck or engine, where such operations would routinely be controlled and performed in a scheduled and fixed rotation." 46 C.F.R. sec. 15.705(a) (2004); 46 C.F.R. sec. 15.705(a) (2005).

2.   The Types of Work Days and the Frequency of Each Type

Madsen lived in Bellingham, Washington.  During 2004 and 2005, all of Madsen's work was done while she was traveling away from her home.  We base our description of each of her days of work on stipulated work schedules for 2004 and 2005 that classify each day of work into one of various categories.  Some days were spent performing repairs and maintenance on Foss's ships while they were docked at port, and a few days were spent in training and receiving vaccinations.

Other than these days, her work duties consisted of sailing from one port to another before she returned home to Bellingham. The ports to which she most often traveled to report for those voyages, Everett and Seattle, Washington, were not more than a 90-minute drive from her home.  She also traveled once each to the departure ports of (i) Tacoma, Washington, (ii) Brownsville, Texas, (iii) Kodiak, Alaska, and (iv) Chayvo, Russia (the Chayvo trip took 3 days).  Madsen would arrive in each port of departure the day before her tugboat was to depart.  She would lodge at a hotel to rest.  She classified the days she spent working on trips among a series of ports in Washington State as "harbor" days.  She classified trips among a series of ports at least one of which was outside Washington State as days at "sea".  She classified the day of departure from the first port in a series of ports and the day of arrival at each successive port,

including the last port, in the same manner as the intermediate days of any particular trip. Thus, if a series of departures and arrivals from various ports were classified as harbor days, the day of departure from the first port and the day of arrival at the last port were also considered harbor days.

Madsen's work days in 2004 and 2005 were classified as follows:[4]

| Days | 2004 | 2005 |
|------|------|------|
| Repair and maintenance, vaccination, and training | 51 | 19 |
| Days of rest before harbor and sea days | 10 | 9 |
| Harbor | 12 | 29 |
| Sea | 135 | 171 |
| Total | 208 | 228 |

---

[4]For all days included in the totals below, the specific dates are listed in Madsen's work schedules, which were stipulated by the parties to be her correct work schedules. Although Madsen made an annual count of her work days on the basis of Foss' fiscal year (Dec. 1 to Nov. 30), she filed as a calendar year taxpayer, and thus we count her work days on a calendar-year basis.

3. <u>Who Paid for Madsen's Lodging and Meals During Each Type of Work Day</u>

    A.   <u>Madsen's Lodging and Meals While She Was in Training, Receiving Vaccinations, or Performing Repairs and Maintenance</u>

On the days in which she trained, was vaccinated, or performed repairs and maintenance, Foss did not provide her with any meals, nor did it reimburse her for any meal expenses. The record is unclear regarding Foss's lodging reimbursement policy for these days, but it is unnecessary for us to determine whether Foss reimbursed Madsen for lodging expenses because (1) the IRS has conceded that Madsen is entitled to deduct specific daily lodging amounts for her days spent performing repairs and maintenance and (2) Madsen did not claim lodging expenses for her days spent in training or receiving vaccinations.

    B.   <u>Madsen's Lodging and Meals on Her Days Before She Departed From Port on Work-Related Voyages</u>

Foss did not reimburse Madsen for the lodging or meal expenses she incurred on the days before she departed from port on her work-related voyages. She introduced, as evidence, a list of her days of rest before departure from port. The list did not include the amounts she actually spent on lodging or meals. As discussed below, we conclude that the IRS's statements at trial amounted to a concession of the deductibility of these expenses.

C.  Madsen's Lodging and Meals on Her Days Spent in Harbor

Foss provided her with lodging on board the tugboats on the harbor days.  The record is unclear regarding whether Foss provided her with any meals or reimbursed her for any meals while she was in harbor.  As explained below, we find that Foss did provide her with free meals for these days, but we do not resolve whether Foss reimbursed her for meal expenses.

D.  Madsen's Lodging and Meals on Her Days Spent at Sea

While Madsen was at sea, Foss provided her with lodging on board the tugboat.  It also provided her with three meals per day.  Madsen was unable to eat the meals provided on board the tugboat vessels because they had caused her to gain weight and experience unhealthy levels of cholesterol when she consumed them over a period of time in the past.  Thus she purchased vegetables, yogurt, tuna, water, rice, and other healthy food at grocery stores to prepare on board for her meals.  The IRS does not contest that Madsen incurred grocery expenses to prepare her own food on board.  Foss did not reimburse its employees for grocery purchases.

4.  Work Clothing

In addition to spending money on food to take aboard the tugboats, Madsen spent money on clothes that she used exclusively at work.  Her employer did not impose any attire requirements.  The clothes she used at work quickly became smelly and torn.  As

a result, she did not wear them outside her working hours.  She required special rain gear for her work on board the tugboats and special cold weather clothes for travel above the Arctic Circle.  She purchased work gloves, rain boots, work boots, and cargo pants--the latter because her overalls did not have enough pockets to carry her work tools.  However, she purchased only the rain gear and the gloves during the tax years at issue.  The rain gear cost $120 per piece.  She purchased a personal flotation device, but she did not purchase it during the tax years at issue.

5.  <u>Tax Returns, Worksheets Presented by Madsen at Trial, and IRS Concessions</u>

Madsen filed timely returns for the tax years 2004 and 2005.  We discuss here only the parts of her returns at issue.  On her 2004 return she claimed $18,337 of unreimbursed employee business expenses on her Schedule A, Itemized Deductions, as follows (we note here any expenses she claimed that the IRS has conceded are deductible):

| Type of Unreimbursed Employee Business Expense | Amount of Expense Claimed on 2004 Return | Whether IRS Has Conceded Deduction |
|---|---|---|
| Mileage | $1,575 | Yes |
| Incidentals | 5,748 | No |
| Work clothes | 749 | No |
| Rental car | 61 | Yes |
| Cabs | 238 | Yes |

| | | |
|---|---|---|
| Overweight baggage | 50 | Yes |
| Hotels (i.e., lodging) | 204 | Yes, in the amount of $5,501 |
| Training | 50 | Yes, in the amount of $100 |
| Cell phone | 600 | Yes |
| Outside U.S. $46 X 179 | 8,234 | No |
| Inside U.S. $41 X 18 | 738 | Yes, in the amount of $1,072.51 |
| Fluke meter | 90 | Yes |
| Total | 18,337 | Total IRS concession $9,287.51 (excluding concession of $100 tax preparation fee not listed on return or worksheet and concessions listed again in the worksheet below |

Madsen submitted an expense worksheet to this Court in which she listed the date, amount, location, vendor, and purpose of each expense that she claims to have incurred in 2004.  The IRS has conceded that some of the amounts she claims to have incurred as expenses are deductible.  The 2004 expense subtotals listed on her worksheet are:

| Type of Unreimbursed Employee Business Expense | Amount Listed on 2004 Worksheet | Whether IRS Has Conceded Deduction |
|---|---|---|
| Mileage | $1,575 | Yes |
| Tools | 90 | Yes |
| Union dues | 818 | Yes |

| | | |
|---|---|---|
| Cell phone | 600 | Yes |
| Overweight baggage | 50 | Yes |
| Rental car | 61 | Yes |
| EPA certification exam | 50 | Yes |
| Work clothes | 797 | No |
| Groceries | 955 | No |
| Laundry supplies | 269 | No |
| Postage | 59 | No |
| Safety supplies | 284 | No |
| Transportation | <u>1,526</u> | No |
| Total | 7,134 | Total IRS concession $3,244 |

On her 2005 return, she claimed $26,108 of unreimbursed employee business expenses on her Schedule A as follows:[5]

| Type of Unreimbursed Employee Business Expense | Amount of Expense Claimed on 2005 Return | Whether IRS Has Conceded Deduction |
|---|---|---|
| Mileage | $6,175 | Yes |
| Incidentals | 5,304 | No |
| License | 160 | Yes |
| Union dues | 908 | Yes |

---

[5]Madsen filed an amended return for 2005 dated Mar. 10, 2007, in which she claimed a $132 reduction in adjusted gross income. She explained the change as "changes due to IRS notice." The IRS stated in section 7(b) of the attachment to the notice of deficiency entitled "Explanation of Adjustments" that it was allowing an additional capital loss of $132 and decreasing its calculation of Madsen's income by the same amount. The IRS has already taken into account this $132 reduction in income by including it in its calculation of the deficiency, and thus we need not address it.

| | | |
|---|---|---|
| Cell phone | 720 | Yes |
| Outside per diem $46 X 209 | 9,614 | No |
| Inside per diem $41 X 57 | 3,227 | Yes, but in the amount of $427.13 |
| Total | 26,108 | Total IRS concession $8,388.13 (excludes concession of $2,133 lodging expense and $70 tax preparation fee not listed on return or worksheet, and concessions listed again in the worksheet below) |

Madsen submitted an expense worksheet for 2005 that was identical in format to the worksheet she submitted for 2004. The IRS has conceded that some of the amounts she claims to have incurred as expenses are deductible. The 2005 expense subtotals listed on her worksheet are:

| Type of Unreimbursed Employee Business Expense | Amount Listed on 2005 Worksheet | Whether IRS Has Conceded Deduction |
|---|---|---|
| Visa photos/office supplies and licensing | $214 | Yes |
| Parts | 165 | Yes, but in the amount of $1,069 |
| Safety supplies | 446 | Yes |
| Work clothes | 1,442 | No |
| Postage, copies, faxes, passport photos | 84 | Yes |
| Transportation | 904 | Yes |

| | | |
|---|---|---|
| Groceries | 1,727 | No |
| Laundry supplies | 182 | Yes |
| Total | 5,164 | Total IRS concession $2,899 |

We now discuss whether Madsen incurred the expenses the IRS did not concede and whether they are deductible.

## Discussion

Madsen has the burden of proving that the determinations of deficiencies in the notice are incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). We conclude that, for the tax years at issue, (1) Madsen is a transportation industry worker (addressed in section 2 below), (2) her deduction for meals and incidental expenses for each work day spent in training, being vaccinated, or performing repairs and maintenance is equal to the applicable special daily rate for transportation industry workers (addressed in section 3 below), (3) her deduction for travel expenses for each day immediately preceding the day of departure on a work-related voyage is (i) the maximum amount for lodging permitted by the Federal Travel Regulations and (ii) the applicable special daily rate for transportation industry workers for her meals and incidental expenses (addressed in section 4 below), (4) her deduction for each harbor day and each sea day is a reduced amount for incidental expenses only, not the unreduced special daily rate for transportation industry workers or the actual amounts she spent on groceries for meals

consumed (addressed in section 5 below), (5) her meals and incidental expense deduction for her first and last days of travel away from home is limited to 75 percent of the applicable special daily rate for transportation industry workers (addressed in section 6 below), (6) Madsen's hours of work were governed by Department of Transportation (DOT) regulations and therefore her meals and incidental expenses are limited to 70 percent, not 50 percent (addressed in section 7 below), and (7) her deduction for the amounts she spent for work clothes is equal to those amounts claimed in her worksheets but she may not deduct amounts she describes as "incidental" expenses (addressed in section 8 below).  Finally, we conclude that she is liable for the section 6662(a) penalty for each year for the amount of her underpayment attributable to her deduction for "incidentals" but that she had reasonable cause for the amount of her underpayment attributable to her claiming excess meals and incidental expenses as a deduction (addressed in section 9 below).

1.   The Rules Governing the Deduction of Travel Expenses

A taxpayer has the burden of proving he or she incurred the amounts that support his or her claims for deductions.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992) (citing Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943)).  A taxpayer must maintain records relating to his or her expenses and must prove his or her entitlement to all claimed

deductions, credits, and expenses in controversy; the taxpayer's
burden thus includes the burden of substantiation.  See sec.
6001; Rule 142(a); <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90
(1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec.
1.6001-1(a), Income Tax Regs.[6]

Section 162(a) permits taxpayers to deduct "all the ordinary
and necessary business expenses paid or incurred during the
taxable year"; and, in particular, section 162(a)(2) permits the
deduction of "traveling expenses (including amounts expended for
meals and lodging other than amounts that are lavish or
extravagant under the circumstances) while away from home in the
pursuit of a trade or business".[7]  A trade or business includes
the performance of services as an employee.  See <u>O'Malley v.
Commissioner</u>, 91 T.C. 352, 363-364 (1988), affd. 972 F.2d 150
(7th Cir. 1992).  Thus, ordinary and necessary expenses generally
include amounts that an employee pays while traveling away from

---

[6]Sec. 1.6001-1(a), Income Tax Regs., provides:

> any person subject to tax * * * [under the Code] shall
> keep such permanent books of account or records,
> including inventories, as are sufficient to establish
> the amount of gross income, deductions, credits, or
> other matters required to be shown by such person in
> any return of such tax or information.

[7]Unreimbursed sec. 162(a)(2) expenses of an employee are
classified as a miscellaneous itemized deduction, and thus, in
total with all other miscellaneous itemized deductions, are
deductible only to the extent they exceed 2 percent of adjusted
gross income.  See secs. 62(a)(1) and (2), 67.

home in connection with his or her employment.  A taxpayer may not deduct travel expenses attributable to personal, living, or family expenses.  See sec. 262.  And section 274(d) provides that

> SEC. 274(d).  Substantiation Required.-- No deduction or credit shall be allowed--
>
> (1) under section 162 or 212 for any traveling expense (including  meals and lodging while away from home),
>
> *    *    *    *    *    *    *
>
> unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, * * * (C) the business purpose of the expense or other item * * *.  The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. * * *

See also sec. 1.274-5(c)(2)(iii)(B), Income Tax Regs.; sec. 1.274-5T(b)(1) and (2), (c)(1) and (2)(i) and (ii), (3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46016 (Nov. 6, 1985).  The meaning of the phrase "by adequate records or by sufficient evidence corroborating the taxpayer's own statement" is clarified by section 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985), which provides in part:

> To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record (as provided in paragraph (c)(2)(ii) of this section), and documentary evidence (as provided in paragraph (c)(2)(iii) of this section) which, in combination, are sufficient to establish each element of an expenditure or use specified in paragraph (b) of

this section. It is not necessary to record information in an account book, diary, log, statement of expense, trip sheet, or similar record which duplicates information reflected on a receipt so long as the account book, etc. and receipt complement each other in an orderly manner.

and by section 1.274-5T(c)(2)(ii), Temporary Income Tax Regs., 50

Fed. Reg. 46017 (Nov. 6, 1985), which provides that

An account book, diary, log, statement of expense, trip sheet, or similar record must be prepared or maintained in such manner that each recording of an element of an expenditure or use is made at or near the time of the expenditure or use.

and by section 1.274-5(c)(2)(iii), Income Tax Regs., which

provides that

(A) Except as provided in paragraph (c)(2)(iii)(B), documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure is required for--

(1) Any expenditure for lodging while traveling away from home, and

(2) Any other expenditure of $75 or more except, for transportation charges, documentary evidence will not be required if not readily available.

(B) The Commissioner, in his or her discretion, may prescribe rules waiving the documentary evidence requirements in circumstances where it is impracticable for such documentary evidence to be required. * * *

and by section 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50

Fed. Reg. 46020 (Nov. 6, 1985), which provides

If a taxpayer fails to establish to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of paragraph (c)(2) of this section with respect to an element of an expenditure or use, then, except as

otherwise provided in this paragraph, the taxpayer must establish such element--

(A) By his own statement, whether written or oral, containing specific information in detail as to such element; and

(B) By other corrobative evidence sufficient to establish such element.

If such element is the description of a gift, or the cost or amount, time, place, or date of an expenditure or use, the corrobative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witnesses setting forth detailed information about such element, or the documentary evidence described in paragraph (c)(2) of this section. If such element is either the business relationship to the taxpayer of persons entertained, or the business purpose of an expenditure, the corrobative evidence may be circumstantial evidence.

A.    Requirements for Deducting Meal Expenses

There are additional rules for how a taxpayer may substantiate meal expenses incurred while traveling away from home. Section 1.274-5(j)(1), (3), Income Tax Regs., permits the IRS to prescribe rules under which taxpayers may deduct a fixed daily amount for meal expenses incurred while traveling away from home and incidental travel expenses without substantiating the actual amount of either the meal expenses or the incidental expenses. Under this regulatory authority, the IRS issued Rev. Proc. 2003-80, 2003-2 C.B. 1037, applicable to travel from November 1, 2003, through September 30, 2004 (which we refer to as the 2003 revenue procedure), Rev. Proc. 2004-60, 2004-2 C.B. 682, applicable to travel from October 1 through December 31,

2004 (which we refer to as the 2004 revenue procedure), Rev.

Proc. 2005-10, 2005-1 C.B. 341, applicable to travel from January

1 through September 30, 2005 (which we refer to as the early 2005

revenue procedure), and Rev. Proc. 2005-67, 2005-2 C.B. 729,

applicable to travel from October 1, 2005, through September 30,

2006 (which we refer to as the late 2005 revenue procedure).  We

refer to the 2003, 2004, and early and late 2005 revenue

procedures collectively as the applicable revenue procedures.

Each revenue procedure restated the rules of the prior period's

revenue procedure almost verbatim, with some changes, and

superseded the prior period's revenue procedure until the

effective date of the subsequent revenue procedure.

Under section 4.03 of the applicable revenue procedures,

taxpayers may elect to use an "Optional method for meal and

incidental expenses only deduction", described as follows:

> In lieu of using actual expenses in computing the
> amount allowable as a deduction for ordinary and
> necessary meal and incidental expenses paid or incurred
> for travel away from home, employees and self-employed
> individuals who pay or incur meal expenses may use an
> amount computed at the federal M&IE rate for the
> locality of travel[8] for each calendar day (or partial
> day) the employee or self-employed individual is away
> from home.  This amount will be deemed substantiated
> for purposes of * * * [the regulations], provided the
> employee or self-employed individual substantiates the
> elements of time, place, and business purposes of the

---

[8]Locality of travel means "the locality where an employee
traveling away from home in connection with the performance of
services as an employee of the employer stops for sleep or rest."
Sec. 3.02(2) of the applicable revenue procedures.

travel for that day (or partial day) in accordance with those regulations. * * *

Thus, under section 4.03 of the applicable revenue procedures, an employee or self-employed individual traveling away from home may, instead of using the actual amounts he or she spent on meals and incidental travel expenses,[9] claim a deduction equal to the "federal M&IE rate".  The "federal M&IE rate" is meant by the applicable revenue procedures to be the rate at which a Federal employee is reimbursed on a per diem basis for meals and incidental travel expenses.  See Bissonette v. Commissioner, 127 T.C. 124, 128 n.6 (2006) (citing Johnson v. Commissioner, 115 T.C. 210, 227 (2000)); sec. 3.02 of the applicable revenue procedures.  This meaning is apparent from the definition of the "federal per diem rate" as "equal to the sum of the applicable lodging expense rate and the applicable federal meal and incidental expense (M&IE) rate for the day and locality of

---

[9]Incidental travel expenses are:

fees and tips given to porters, baggage carriers, bellhops, hotel maids, stewards or stewardesses and others on ships, and hotel servants in foreign countries; transportation between places of lodging or business and places where meals are taken, if suitable meals cannot be obtained at the temporary duty site; and the mailing cost associated with filing travel vouchers and payment of employer-sponsored charge card billings.

Sec. 3.02(3) of the applicable revenue procedures.

travel."[10]  Sec. 3.02(1) of the applicable revenue procedures.
Although the phrase "federal M&IE rate" is not defined in section
3.02(1), the language directly below section 3.02(1) provides
that the "rates" (a word that means, it is apparent, both the
"applicable federal lodging expense rate" and the "applicable
federal meal and incidental expense (M&IE) rate") are to be found
in various places in the Federal Travel Regulations.  In
particular, for "rates" inside the continental United States, the
applicable revenue procedures direct the reader to appendix A of
41 C.F.R. chapter 301, which is the portion of the Federal Travel
Regulations that contains the rates of reimbursement for federal
employees who travel inside the United States (CONUS rates).
Sec. 3.02(1)(a) of the applicable revenue procedures.  These
CONUS reimbursement rates, which vary by location, comprise two
components:  the maximum daily rate at which the federal
government will reimburse actual lodging expenses, and the rate
at which the federal government will reimburse meals and
incidental expenses in lieu of reimbursing actual expenses.  And
for "rates" outside the continental United States, the applicable

---

[10]Sec. 4.01 of the applicable revenue procedures permits an
employer paying a per diem allowance in lieu of reimbursing
actual expenses for lodging, meal, and incidental expenses
incurred by an employee to deduct the lesser of the employer's
per diem allowance for a particular day or the federal per diem
rate for the locality of travel for that day.  The applicable
revenue procedures do not permit an employee or self-employed
individual to use the federal per diem rate or the applicable
lodging expense rate.

revenue procedures direct the reader to monthly publications that update the Federal Travel Regulations with rates of reimbursement for federal employees who travel outside the United States (OCONUS rates). Sec. 3.02(1)(b) of the applicable revenue procedures. These OCONUS reimbursement rates similarly comprise both lodging and meals and incidental expense components, which also vary by location. The references to "rates" in the applicable revenue procedures make it plain that the phrase "federal M&IE rate" means the rates at which the federal government calculates its expense reimbursements to its employees. This meaning is reinforced by section 6.01 of the applicable revenue procedures, which provides that "The federal per diem rate and the federal M&IE rate described in section 3.02 of this revenue procedure for the locality of travel will be applied in the same manner as applied under Federal Travel Regulations, 41 C.F.R. Part 301-11 * * *, except as provided in sections 6.02 through 6.04". Thus, the federal M&IE rate varies by locality of travel in the same manner as the reimbursement rate for federal employees' travel.

Whereas section 4.03 allows a traveling employee or self-employed individual to deduct daily rates for meals and incidental travel expenses in lieu of actual expenses, there is no similar provision for deducting lodging expenses. Thus, an employee or self-employed individual incurring a lodging expense

on business travel must deduct the actual amounts he or she spent on the lodging, or deduct no amount at all. As explained supra note 10, an employee or self-employed individual may not use the applicable lodging expense rate mentioned in the applicable revenue procedures to substantiate the employee's lodging expenses.

Section 4.04(2) of the 2003 revenue procedure and 4.04(3) of the other applicable revenue procedures provide that an employee or self-employed individual working in the transportation industry may

> treat $41 [$52 for travel from October 1, 2005 to September 30, 2006] as the federal M&IE rate for any CONUS locality of travel, and $46 [$58 for travel from October 1, 2005 to September 30, 2006] as the federal M&IE rate for any OCONUS locality of travel. * * * [An] employee or self-employed individual that uses either (or both) of these special rates must use the special rate(s) for all amounts computed * * * for travel away from home within CONUS and/or OCONUS, as the case may be, during the calendar year.[11] * * *

We refer to the $41 rate ($52 for travel from October 1, 2005, to September 30, 2006) for CONUS localities of travel and the $46 rate ($58 for travel from October 1, 2005, to September 30, 2006) for OCONUS localities of travel as the special daily rates for transportation industry workers.

_____

[11]A CONUS locality of travel means a port within the continental United States. An OCONUS locality of travel means a port outside the continental United States, whether foreign or domestic.

Thus, a transportation industry worker who incurred meal expenses while traveling away from home during a particular tax year has a choice when filing his or her income-tax return for that tax year to (1) substantiate the actual amount of his or her actual meals and incidental expenses, (2) use the federal M&IE rates (which are equal to the rate at which the federal government will reimburse meals and incidental expenses in lieu of actual expenses), or (3) use the special daily rates for transportation industry workers.  A transportation industry worker choosing one of the two sets of daily rates (i.e., method (2) or (3)) must consistently apply the set of rates chosen for all meals and incidental expenditures the worker claims for the entire calendar year.  Sec. 4.03 of the applicable revenue procedures (stating that a taxpayer who chooses to use the federal M&IE rate must consistently use it for all meals and incidental expenses claimed during a calendar year); sec. 4.04(2) of the 2003 revenue procedure and sec. 4.04(3) of the 2004 and early and late 2005 revenue procedures (stating that a taxpayer who chooses to use special daily rates for transportation industry workers must consistently use it for all meals and incidental expenses claimed during a calendar year).

B.    Requirements for Deducting Lodging Expenses

The regulations under section 274(d) impose the same requirements for deducting lodging expenses as for deducting meal

expenses, with two exceptions. First, when a taxpayer substantiates his or her lodging expenses by adequate records (as opposed to substantiating the taxpayer's own statement of his or her lodging expenses by corroborative evidence), the taxpayer must have "documentary evidence". Sec. 1.274-5(c)(2)(iii)(A) Income Tax Regs., sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., supra. (By contrast, the same regulations require documentary evidence for most other expenses, including meal expenses, only if the expense exceeds $75.) Second, the regulations under section 274(d) did not authorize the IRS to include a provision in the applicable revenue procedures allowing employees or self-employed individuals to deduct, in lieu of actual expenses, the maximum amount the federal government allows its employees to claim as reimbursement for actual lodging expenses for business travel within or outside the United States. Thus, for lodging expenses, the employee must deduct actual expenses.

2. Whether Madsen Is a Transportation Worker

As stated above, a transportation industry worker may deduct all of his or her meals and incidental expenses while traveling away from home on business at special rates for a calendar year provided that the worker consistently applies the rates throughout that year. Madsen chose to claim the special daily rates for transportation industry workers for all of her days of

travel away from home (i.e., for all days spent (1) performing repairs and maintenance, (2) receiving vaccination, (3) receiving training, (4) resting before departure from port, (5) at harbor, and (6) at sea). Thus for all six categories of days Madsen claims that her deduction is $41 or $46 per day for her meals and incidental travel expenses (she does not claim a deduction for any days at the $52 or $58 rate). The IRS has made a number of challenges to the deductions that Madsen seeks, but it does not expressly deny that Madsen is a transportation worker. At the audit level, the IRS took the position that Madsen was not a transportation worker. We consider Madsen a transportation industry worker for purposes of the applicable revenue procedures.[12]

3. Travel Expense Deductions for Repair and Maintenance, Training, and Vaccination Days

Madsen claimed her meals and incidental expenses at the special rates for transportation industry workers for her days

_____

[12]The applicable revenue procedures provide:

an employee or self-employed individual is in the transportation industry only if the employee's or individual's work (a) is of the type that directly involves moving people or goods by airplane, barge, bus, ship, train, or truck, and (b) regularly requires travel away from home, which during any single trip away from home, usually involves travel to localities with differing federal M&IE rates. * * *

Sec. 4.04(4) of the 2003 revenue procedure; sec. 4.04(2) of the 2004 and early and late 2005 revenue procedures.

spent performing repair and maintenance, in training, and receiving vaccinations.  The IRS concedes that the federal M&IE rate (the term we defined supra p. 22) should be used for the days performing repairs and maintenance.  The IRS says she should receive no meal deduction for her (1) days spent in training, and (2) days being vaccinated.  As a factual matter, the IRS's argument rests upon the allegation that during these first two categories of days Madsen received free meals from Foss.  The record indicates that Foss did not provide her meals or reimburse her for meal expenses while she was in training and being vaccinated.  Furthermore, Madsen's stipulated work schedules satisfy the requirement of section 1.274-5T(b) and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985), that she substantiate the elements of time, place, and business purposes of her travel for each day or partial day of travel. Madsen is a transportation industry worker who claimed the use of the special daily rates for transportation workers.  Thus, her deduction for her meal expenses for the days she was training, being vaccinated, or performing repair and maintenance is the applicable special daily rate for transportation industry workers.  The rate was $41 per day for CONUS localities of travel applicable to 51 days of travel away from home in 2004, resulting in a deduction of $2,091 for 2004, and $41 per day for 19 days of travel away from home in 2005 (the $52 rate did not apply to any

of the days in 2005), resulting in a deduction of $779 in 2005. None of the days were spent in OCONUS localities of travel.[13]

4. Travel Expense Deductions for the Day Before Each Departure of the Tugboat From the Port at Which Madsen Joined the Tugboat

Madsen arrived in the port of departure on the day before her tugboat would depart from port. Madsen claims that she did so to comply with 46 U.S.C. sec. 8104(a) (2006), which requires that engineering watchpersons be off duty for 6 hours during the 12 hours immediately before a boat's departure from port. In its answer, the IRS contested the deductibility of lodging and meal expenses allocable to each day before her departure at port. But at trial, the IRS stated that "Respondent concedes that Petitioner's tax home is in Bellingham, Washington. In the notice of deficiency Petitioner was not allowed travel expenses to Seattle, Washington, nor was she allowed lodging or meals and incidental per diem." After the trial, the Court ordered that the IRS clarify in writing the concessions it made at trial. The IRS did not include amounts for lodging or meals and incidental expenses allocable to each day before a work-related voyage in its list of concessions. The issues of meals and lodging expense deductions for days before departure from port were not discussed

---

[13]The IRS has conceded that the lodging expenses (in the amounts of $5,501 for 2004 and $2,133 for 2005) that Madsen incurred while performing repair and maintenance on Foss' docked ships are deductible. She did not claim lodging expenses for days spent in training or receiving vaccinations.

by either party in its brief.  As we explain below, we deem the issue of Madsen's claim for lodging and meals and incidental expenses for her days before departure from port to be conceded by the IRS.  Section A below discusses the meal expenses for these days.  Section B below discusses the lodging expenses for these days.

A.   Meal Expense Deduction for Days Before Each Departure of the Tugboat From the Port at Which Madsen Joined the Tugboat

For a taxpayer to be entitled to a deduction for traveling away from home, three conditions must be met (in addition to the substantiation requirements of section 274(d)):  (1) The expenses must be ordinary and necessary; (2) the expenses must have been incurred while the taxpayer was "away from home"; and (3) the taxpayer must have incurred the expenses in pursuit of a trade or business.  Sec. 162(a).  The Supreme Court interpreted the predecessor to section 162(a) to impose these three requirements in Commissioner v. Flowers, 326 U.S. 465, 470 (1946).  The reference to a "home" means a tax home.  See Barone v. Commissioner, 85 T.C. 462, 465 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986).  As a general rule, the tax home is the principal place of business.  If the taxpayer does not have a principal place of business, the tax home is the taxpayer's permanent place of residence.  Id.  The IRS's statement at trial could be reasonably understood to concede that

Madsen had satisfied all three conditions of the Flowers test for her meal expenses allocable to each day before a work-related voyage. The IRS stated that it conceded that Madsen's tax home was in Bellingham and then contrasted its concession with its prior position to deny travel expenses to Seattle, which was one of the primary ports of departure. The contrast implies that the IRS conceded Madsen's right to deduct meal expenses on days traveling to all ports of departure, such as Seattle. This interpretation explains why the issue of Madsen's claim for meal deductions on days before work-related voyages is not discussed in the parties' briefs. We deem the IRS to have conceded the issue, and we determine that Madsen's deductions for her meals and incidental expenses for each day before a work-related voyage are equal to the amount of the applicable special daily rate for transportation industry workers. In 2004 she arrived in Seattle before sailings seven times, Everett, Washington one time, Brownsville, Texas one time, and Kodiak, Alaska one time. Thus, she is entitled to a meals and incidental expenses deduction of $415 for 2004 (9 days in CONUS localities of travel at the $41 rate and 1 day in an OCONUS locality of travel at the $46 rate). In 2005 she arrived in Seattle before voyages five times, Tacoma, Washington, one time, and Seoul, South Korea, and Yuzno and Chayvo, Russia, one time each over a 3-day journey. Thus, she is entitled to a meals and incidental expenses deduction of $384 for

2005 (6 days in CONUS localities of travel at the $41 rate and 3 days in OCONUS localities of travel at the $46 rate).

B. <u>Lodging Expense Deduction for Days Before Each Departure of the Tugboat From the Port at Which Madsen Joined the Tugboat</u>

On the days before she boarded her tugboat, Madsen would stay overnight at a hotel near the port of departure. Foss did not reimburse her for what she paid the hotels. Madsen did not produce receipts for what she paid the hotels. The applicable revenue procedures do not grant an employee an option to use, as the amount of the deduction for lodging expenses, the maximum amount that federal employees are reimbursed for actual lodging expenses for business travel within or outside the United States. Thus, there is no relief offered for the requirement under section 274(d) that the taxpayer have adequate records proving the actual lodging expenses incurred while traveling away from home or evidence corroborating the taxpayer's own statement of the lodging expenses. Madsen did not submit this evidence to this Court, but she may not have done so because she reasonably believed the IRS conceded her right to the lodging expenses in its statement at the beginning of the trial. Although the IRS did not list amounts of any conceded lodging expenses in its report to the Court, we believe the IRS's statements at trial could be reasonably construed as a concession of Madsen's right to claim lodging expenses for each day of travel before a

work-related voyage (as well as meals and incidental expenses for such days). While the law does not permit Madsen (or any other taxpayer who is an employee) to apply the maximum lodging amounts for reimbursement of federal employees' travel in preparing her tax return, we will use the maximum lodging amounts as an estimate of Madsen's lodging expenses, in the absence of receipts for the actual lodging expenses in the record, because the IRS's statement at trial could have reasonably caused Madsen to believe that the IRS had conceded that she need not submit documentary evidence of her actual lodging expenses.[14] (We do not use an amount less than the maximum amount because we believe the maximum amounts to approximate what Madsen actually spent.) For 2004 the maximum amounts federal employees could be reimbursed for lodging were: (1) $143 per day for six of her days spent in Seattle before travel on work-related voyages and $136 for one other day in Seattle (because of a seasonal change in the CONUS rate), (2) $59 per day for one day in Everett, Washington, (3) $55 per day for one day in Brownsville, Texas, and (4) $90 per day for one day in Kodiak, Alaska. Thus, in 2004, Madsen is entitled to a lodging expense deduction of $1,198. In 2005 the maximum lodging amounts were: (1) $136 per day for her five days

_____

[14]We do not mean to say that every vague concession by a party should be deemed to be whatever the other party could have reasonably believed the concession to be. Our rationale for construing the concession the way we do in this case depends on factors peculiar to this case.

in Seattle and (2) $79 per day for one day in Tacoma, Washington. Thus, in 2005 she is entitled to a lodging expense deduction of $759. Madsen is not entitled to a lodging deduction for the three days she spent in Seoul, South Korea, and Yuzno and Chayvo, Russia, in 2005 because she claimed no lodging expenses on her worksheets for those days.

5. Travel Expense Deductions for Days at Harbor and at Sea

Madsen claimed a meals and incidental expenses deduction for travel away from home while in harbor and at sea.[15] Foss provided her with three free meals per day while she was at sea. The record is silent as to whether Foss provided free meals to Madsen or reimbursed her for meals at harbor. Because Madsen has the burden of proof, see Rule 142(a), we find that Foss provided her with three free meals per day at harbor.

Madsen argues that she could not eat the food that Foss provided because it was unhealthy. Thus, she argues that her deductions should be equal to the federal M&IE rate for her days at sea, without any reduction in that rate for free meals, or, in the alternative, the actual cost of the groceries, because she purchased groceries to cook healthy food for herself. Madsen did not specifically make the same argument about harbor days; i.e., that she should deduct the federal M&IE rate for her days at

---

[15]Madsen did not claim lodging expenses for her days spent in harbor or at sea.

harbor without reduction for free meals, or in the alternative, deduct the actual cost of the groceries. We find that Foss provided her with three free meals per day at harbor. Thus, we analyze both her harbor days and sea days together. The IRS argues that Madsen's meals and incidental expense deduction should be reduced to $3 per day to account for the three free meals.

We hold that Madsen's deduction is equal to the special daily rate for transportation workers, reduced to $3 per day. It does not matter that she did not actually consume the meals. The Federal Travel Regulations require that a federal employee's meals and incidental expenses reimbursement rate be reduced for meals provided by the federal government by deducting fixed amounts for each meal provided (listed in a table in the Federal Travel Regulations), but not to less than the amount allowed for incidental expenses ($3). See 41 C.F.R. sec. 301-11.18 (2004); 41 C.F.R. sec. 301-11.18 (2005).[16] Under the Federal Travel

---

[16]Tit. 41 C.F.R. sec. 301-11.18 (2004) and 41 C.F.R. sec. 301-11.18 (2005) provide:

> What M&IE rate will I receive if a meal(s) is furnished at nominal or no cost by the Government or is included in the registration fee?

> Your M&IE rate must be adjusted for a meal(s) furnished to you (except as provided in § 301-11.17 [see infra note 16 for a discussion of this provision]), with or without cost, by deducting the appropriate amount shown in the chart in this section for CONUS travel,

(continued...)

Regulations for the years at issue, if the federal government provides an employee with all three meals per day, the reimbursable amount of the federal M&IE rate is reduced to only $3 per day. The Federal Travel Regulations for the tax years at issue do not contain an exception to the rule requiring daily rate reduction for Government-provided meals when the employee cannot or will not eat the food for health reasons, but they do now. See F.T.R. Amendment 2009-03, 74 Fed. Reg. 16328 (Apr. 10, 2009). This change suggests that a health exception to the rate reduction rule was not available during the tax years at issue. Section 6.01 of the applicable revenue procedures provides that "the federal M&IE rate described in section 3.02 * * * for the locality of travel will be applied in the same manner as applied

---

[16](...continued)
reference Appendix B of this chapter for OCONUS travel, or any method determined by your agency. * * * The total amount of deductions made will not cause you to receive less than the amount allowed for incidental expenses.

| Total M&IE | $31 | $35 | $39 | $43 | $47 | $51 |
|---|---|---|---|---|---|---|
| Breakfast | 6 | 7 | 8 | 9 | 9 | 10 |
| Lunch | 6 | 7 | 8 | 9 | 11 | 12 |
| Dinner | 16 | 18 | 20 | 22 | 24 | 26 |
| Incidentals | 3 | 3 | 3 | 3 | 3 | 3 |

under the Federal Travel Regulations, 41 C.F.R. Part 301-11".
Thus, an employee's federal M&IE rate must be reduced if the
employee receives free meals. See Johnson v. Commissioner, 115
T.C. at 226 n.8 ("the fact that * * * [the Federal Travel
Regulations provide] explicitly that the M&IE rate must be
reduced when the Government provides an employee with meals at no
charge counters petitioner's argument that we should not reduce
the M&IE rates to take into account his employer-provided
meals."); Balla v. Commissioner, T.C. Memo. 2008-18. Section
6.01 of the applicable revenue procedures does not specifically
mention the special daily rates for transportation industry
workers in section 4.04. One could therefore argue that the
special daily rates should not be adjusted for employer-provided
meals (as the federal M&IE rates for nontransportation workers
must be adjusted). But the applicable revenue procedures state
elsewhere that the special daily rates are a type of federal M&IE
rate. Sec. 4.04(2) of the 2003 revenue procedure; sec. 4.04(3)
of the 2004 and early and late 2005 revenue procedures ("A * * *
[transportation industry worker] may treat $41 [$52 for the late
2005 revenue procedure] as the federal M&IE rate for any CONUS
locality of travel, and $46 [$58 for the late 2005 revenue
procedure] as the federal M&IE rate for any OCONUS locality of
travel."). Thus we hold that the reduction required in the
Federal Travel Regulations for free meals also results in a

reduction in the special daily rates for transportation workers. As Foss provided Madsen with three meals per day, the reduction leaves her an allowable deduction of $3 per day allocable to incidental expenses. See Johnson v. Commissioner, supra at 227-228; 41 C.F.R. sec. 301-11.18 (2004) and 41 C.F.R. sec. 301-11.18 (2005).[17] She spent 147 days in harbor and at sea during 2004 and 200 days in harbor and at sea in 2005, resulting in a deduction of $441 in 2004 and $600 in 2005.[18]

Madsen argues that, as an alternative to use of the special daily rates for transportation industry workers, her deduction

---

[17]Madsen also argues that she is entitled to the unreduced meal and incidental expense deduction in harbor and at sea because she believes she received meals from a common carrier. She bases her argument on the Federal Travel Regulations, which state that a meal provided by a common carrier or a complimentary meal provided by a hotel or motel does not result in a reduction of a federal employee's allowable daily rate used for claiming reimbursement of meal expenses. 41 C.F.R. sec. 301-11.17 (2004); 41 C.F.R. sec. 301-11.17 (2005). But Foss is not a common carrier because a common carrier is open to the public and must transport freight or passengers without refusal. See Balla v. Commissioner, T.C. Memo. 2008-18 (holding that "Petitioner's tugboat is not a common carrier"); Black's Law Dictionary 242 (9th ed. 2009). Therefore, the regulation is inapplicable to her case.

[18]Madsen asserted in her worksheets that she is entitled to use the unreduced special daily rates for transportation industry workers for her meals and incidental expenses for her last day of her harbor and sea voyages. Madsen did not address at what time during those days the boats typically docked and her employer ceased to provide her with meals. As Madsen had the burden of proof, we find that she was provided with three free meals during these days. We therefore permit a deduction for these last days of travel at the same rate of $3 per day applicable to other days in harbor or at sea. This deduction is reflected in the calculations above.

for meals should be equal to the actual cost of the groceries she purchased for her meals at harbor and at sea ($955 in 2004 and $1,727 in 2005). She may not do so because she claimed the special daily rates for transportation industry workers on her return for all travel days during the year. She must consistently apply one method for all of her work days throughout a calendar year. She cannot choose one method for her days at harbor and at sea and another method for her other work days (i.e., her days spent training, being vaccinated, performing repair and maintenance, or resting on days before work-related voyages). Sec. 4.04(2) of the 2003 revenue procedure; sec. 4.04(3) of the 2004 and early and late 2005 revenue procedures.

6. <u>Proration of Deduction for Meal and Incidental Expenses for First and Last Days of Travel Away From Home</u>

For all six categories of work days, a subset of those days includes partial travel days; i.e., days that Madsen was partly at home and partly traveling on business. The IRS argues that Madsen may claim only 75 percent of the meals and incidental expenses that she is otherwise entitled to claim on those days.[19]

---

[19]Madsen's first and last days away from home in 2004 were: Jan. 8 (last day at sea), Jan. 13 (single day of repairs and maintenance (r&m)), Feb. 13 (first day of r&m), Feb. 17 (last day of r&m), Mar. 2 (day before voyage), Apr. 9 (last day of r&m), Apr. 22 (day before harbor voyage), Apr. 29 (last day at harbor), May 11 (day before sea voyage), June 6 (last day at sea), June 6 (day before r&m), June 17 (last day of r&m), June 20 (day before sea voyage), July 4 (last day at sea), July 18 (day before sea voyage), Aug. 10 (last day at sea), Aug. 30 (first day of r&m),

(continued...)

We agree.  For any partial day of travel, section 6.04 of the applicable revenue procedures states that under section 4.04 (applicable to those employing the special daily rates for transportation industry workers), one of the following two methods must be used to prorate the federal M&IE rate:

> (1) The rate may be prorated using the method prescribed by the Federal Travel Regulations. Currently the Federal Travel Regulations allow three-fourths of the applicable Federal M&IE rate for each partial day during which the employee or self-employed individual is traveling away from home in connection with the performance of services as an employee or self-employed individual. * * *; or

> (2) The rate may be prorated using any method that is consistently applied and in accordance with reasonable business practice.  For example, if an employee travels away from home from 9 a.m. one day to 5 p.m. the next day, a method of proration that results in an amount equal to two times the Federal M&IE rate will be treated as being in accordance with reasonable business practice (even though only one and a half times the Federal M&IE rate would be allowed under the Federal Travel Regulations).

---

[19](...continued)
Aug. 31 (last day of r&m), Sept. 1 (day before sea voyage), Oct. 14 (last day at sea), Nov. 10 (day before harbor voyage), Nov. 17 (last day of training), Nov. 20 (first day of r&m), Dec. 3 (last day of r&m), Dec. 15 (first day of r&m), Dec. 17 (last day of r&m), Dec. 20 (first day of r&m), Dec. 22 (last day of r&m), Dec. 27 (first day of r&m), and Dec. 30 (last day of r&m).  Her first and last days away from home in 2005 were:  Jan. 3 (single day of r&m), Jan. 5 (day before harbor voyage), Jan. 30 (last day at sea), Feb. 11 (day before harbor voyage), Feb. 19 (last day at harbor), Mar. 2 (day before r&m), May 3 (last day at sea), May 4 (day before r&m), May 13 (last day at r&m), May 25 (day before r&m), July 11 (last day at sea), July 15 (vaccination), Aug. 23 (single day of r&m before days at sea), Sept. 9 (last day at sea), Sept. 21 (day before sea voyage), Nov. 3 (last day at sea), and Nov. 15 (day before harbor voyage).

The taxpayer must use the first proration option above (75 percent) for partial days in which he or she may use only the incidental-expenses-only rate.  Id.

Madsen must prorate her days that were first and last days of travel away from home because those days were partial work days that required travel to and from her home in Bellingham, Washington.  She is required to employ option 1 above for her first and last days at harbor and at sea because she must use the incidental-expenses-only rate on those days.  Regarding her other first and last days of travel away from home, she has not demonstrated to the Court that she "consistently applied" a method "in accordance with reasonable business practice" (option 2 above) that would entitle her to a proration method other than the general rule of deducting 75 percent of the allowable rate on partial days of travel (option 1 above).  Cf. Bissonnette v. Commissioner, 127 T.C. at 136 (taxpayer "consistently applied * * * [100 percent of the] Federal M&IE rate to all off-peak-season voyages requiring him to be away from home for 15 to 17 hours a day.").  Thus, we hold that Madsen may deduct only 75 percent of the special daily rates for transportation workers on all of her first and last days of travel away from home in 2004 and 2005.

7.   Whether the Increased Allowable Deduction for Meals and Incidental Expenses for Individuals Subject to Federal Hours-of-Service Limitations Applies to Madsen

Section 274(n)(1)(A) provides that the amount allowable as a deduction for "any expense for food or beverages" is reduced to 50 percent of the amount of the expense that would otherwise be allowable under section 162.  The applicable revenue procedures provide rules for applying the section 274(n)(1) 50-percent limitation to the daily rate allowances.  A taxpayer who uses the meals and incidental expenses rates under section 4.03 of the applicable revenue procedures (or the special transportation industry worker rates under section 4.04) is required to treat that amount as an expense for food and beverages.  Sec. 6.05(1) of the applicable revenue procedures.  The meals and incidental expenses rate is thus subject to the reduction contained in section 274(n)(1).  But the incidental-expenses-only rate of $3 per day is not.  Sec. 6.05(4) of the applicable revenue procedures.

Madsen is entitled to claim the special meals and incidental expenses rates for transportation industry workers for her days spent training, being vaccinated, performing repair and maintenance, and resting in port before departure on work-related voyages.  Therefore, her meals and incidental expenses incurred on those days are subject to a reduction under section 274(n)(1).  But Madsen asserts that the percentage of the deduction allowed

should be 70 percent, not 50 percent, because she was subject to the hours-of-service limitations of the DOT.  Section 274(n)(3) provides:

> (3) Special rule for individuals subject to federal hours of service.--
>
> (A) In general.--In the case of any expenses for food or beverages consumed while away from home (within the meaning of section 162(a)(2)) by an individual during, or incident to, the period of duty subject to the hours of service limitations of the Department of Transportation, paragraph (1) shall be applied by substituting "the applicable percentage" for "50 percent".
>
> (B) Applicable percentage.--For purposes of this paragraph, the term "applicable percentage" means the percentage determined under the following table:

| For taxable years beginning in calendar year-- | The applicable percentage is-- |
| --- | --- |
| 1998 or 1999..................... | 55 |
| 2000 or 2001..................... | 60 |
| 2002 or 2003..................... | 65 |
| 2004 or 2005..................... | 70 |
| 2006 or 2007..................... | 75 |
| 2008 or thereafter.............. | 80 |

Thus if Madsen was subject to the DOT hours-of-service limitations during 2004 and 2005, the deduction of her meals and incidental expenses while training, being vaccinated, performing repairs and maintenance, or resting before work-related voyages would be increased from 50 percent to 70 percent.  (As we said earlier, her incidental expense deduction of $3 per day for her days in harbor or at sea would not be subject to any reduction.)

The IRS argues that Madsen is not permitted to claim 70 percent of her meals and incidental expenses while she trained, was vaccinated, or performed repairs and maintenance because, it claims, the laws and regulations that impose hours-of-service limitations govern only her days of work at sea. We disagree. Federal law and Coast Guard regulations permit a ship's officer to perform a deck or engineering watch on a boat immediately after leaving port only if the officer has been off duty for at least 6 hours within the 12 hours before the time of departure. 46 U.S.C. sec. 8104(a) (2006); 46 C.F.R. sec. 15.705(a) (2004); 46 C.F.R. sec. 15.705(a) (2005). The law also forbids a licensed individual working on a towing vessel that is at least 26 feet in length from working for more than 12 hours in a 24-consecutive-hour period, except in an emergency. 46 U.S.C. secs. 8104(h), 8904 (2006); see also 46 C.F.R. sec. 15.710 (2004); 46 C.F.R. sec. 15.710 (2005). A licensed individual in the deck or engine department of a towing vessel may not work more than 8 hours in one day, more than 15 hours in any 24-hour period, or more than 36 hours in any 72-hour period, except in an emergency. 46 U.S.C. 8104(c) (2006); see also 46 C.F.R. 15.710 (2004); 46 C.F.R. 15.710 (2005). These limitations constitute DOT hours-of-service limitations,[20] and Madsen was subject to

[20]Madsen was a licensed merchant mariner and was certified to perform navigational and engineering watches by the U.S.
(continued...)

these laws and regulations during the years at issue because she was both a licensed merchant mariner and the chief engineering officer on Foss's tugboats, and she performed engineering watches on board those vessels during those years. The record is unclear regarding whether she was directly subject to the hours-of-service limitation "during" (within the meaning of section 274(n)(3)(A)) each of her days of work spent training, being vaccinated, and performing repair and maintenance. But the work (including her days of rest before sailing) was certainly "incident to * * * the period of duty subject to the hours of service limitations of the Department of Transportation"

---

[20](...continued)
Coast Guard during the years at issue. Although the U.S. Coast Guard was transferred to the Department of Homeland Security in 2003 pursuant to the Homeland Security Act of 2002, Pub. L. 107-296, sec. 888(b), 116 Stat. 2249, the Coast Guard was part of the Department of Transportation when sec. 274(n)(3) was enacted in 1997 pursuant to the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 969(a), 111 Stat. 896. The Senate Finance Committee and conference reports stated at the time of enactment of the Taxpayer Relief Act of 1997 that "Individuals subject to the hours of service limitations of the Department of Transportation include * * * certain merchant mariners pursuant to Coast Guard regulations." S. Rept. 105-33, at 106 (1997), 1997-4 (Vol. 2) C.B. 1067, 1186; H. Conf. Rept. 105-220, at 481 (1997), 1997-4 (Vol. 2) C.B. 1457, 1951. The IRS has not argued that the transfer of the Coast Guard to the Department of Homeland Security has legal significance in determining whether any merchant mariner is subject to the DOT hours-of-service limitations after the 2003 transfer occurred. Thus, we hold that for the purposes of this case, Madsen, who is a merchant mariner subject to Coast Guard regulations limiting merchant mariners' hours of service, may qualify for the increased allowable percentage on the deduction of food and beverages under sec. 274(n)(3).

(emphasis added) within the meaning of section 274(n)(3)(A) because most of the work occurred immediately before or after days when she was undoubtedly subject to hours-of-service limitations; that is, her days in harbor or at sea.  We therefore hold that the increased allowable percentage for her meals and incidental expenses deductions applies to her days spent training, being vaccinated, performing repair and maintenance, and resting in port before work-related voyages.  The rate is 70 percent during the tax years at issue, 2004 and 2005.  Sec. 274(n)(3)(B).

8.   Other Business-Expense Deductions

A.   Deduction for "Incidentals"

Madsen claimed an unreimbursed employee business expense deduction for "incidentals" of $5,748 on her 2004 return and $5,304 on her 2005 return.  Madsen did not clarify at trial what the deductions were for.  Madsen has the burden of proving that she incurred each expense listed on her return and that each was an ordinary and necessary business expense.  Sec. 1.162-17(d)(2), Income Tax Regs.  Although she submitted to the Court two itemized lists of expenses for which she asserted that she was entitled to deductions, it is unclear whether these lists contain the same expenses labeled "incidental" expenses on her returns. We will consider the deductibility of all the worksheet expenses anyway, but we disallow the deductions labeled "incidental"

expenses on her returns to the extent the term does not include the worksheet expenses discussed below.

B.    Other Worksheet Expenses

The IRS concedes that all of the expenses listed on the two worksheets are deductible except:  (1) grocery expenses of $955 purportedly incurred in 2004 and $1,727 purportedly incurred in 2005, (2) laundry supply expenses of $269 purportedly incurred in 2004, (3) postage expenses of $59 purportedly incurred in 2004, (4) safety supplies of $284 purportedly incurred in 2004, (5) transportation expenses of $1,526 purportedly incurred in 2004, and (6) work clothes expenses of $797 purportedly incurred in 2004 and $1,442 purportedly incurred in 2005.  We have already explained why the grocery expense deductions are not allowable. The 2004 laundry supply, postage, safety-supply and transportation expense deductions are not allowable because Madsen did not present any evidence proving that she is entitled to those deductions.  She did provide evidence regarding her work clothes expenses, and thus we shall discuss the expenses.  First, we must decide whether Madsen has satisfied the legal standard for deducting her work clothes expenses under section 162.  Then we must decide whether she has met her burden of substantiation for the work clothes expense deduction.

For their costs to be deductible as ordinary and necessary business expenses under section 162, work clothes must be (1)

required or essential in the taxpayer's employment, (2) not suitable for general or personal wear, and (3) not actually worn for general or personal wear.  Hynes v. Commissioner, 74 T.C. 1266, 1290 (1980); Yeomans v. Commissioner, 30 T.C. 757, 767 (1958).  Although Foss did not require Madsen to wear any specific clothing, her cold weather and rain gear, cargo pants, and other work clothes were essential for her employment.  Thus, the first requirement for deducting work clothes expenses under section 162 is satisfied.  We now address the second requirement, whether Madsen's clothes were suitable for general or personal wear.  Her work clothes were not suitable for general wear because they became torn quickly within the course of her employment.  Meier v. Commissioner, 2 T.C. 458 (1943) (nurse could deduct the cost of her uniform because once she wore the uniform at her hospital, it was unsanitary for her to wear the uniform outside the hospital).  Madsen testified credibly that she did not actually wear her work clothes for general or personal wear.  Thus, the third requirement is satisfied.  As all three factors of the test have been satisfied, Madsen's work clothes costs qualify as ordinary and necessary business expenses--but she must also prove that she incurred the expenses.

Madsen testified that she bought work clothes, but when the IRS pressed her to identify the items purchased during the tax years at issue, she mentioned only the rain gear and the gloves.

She also submitted to this Court a detailed expense worksheet each line of which identified the date, location, vendor, and amount of each purchase of work clothes. She did not identify the specific type of work clothes purchased next to each line item. Instead she labeled each purchase "work clothes."

A taxpayer must maintain records relating to his or her expenses and must prove his or her entitlement to all claimed deductions. See sec. 6001; Rule 142(a); Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs. The relevant regulation explains that one method of substantiating an ordinary and necessary business expense is through "preparation of a daily diary or record of expenditures, maintained in sufficient detail to enable * * * [the employee] to readily identify the amount and nature of any expenditure, and the preservation of supporting documents, especially in connection with large or exceptional expenditures." Sec. 1.162-17(d)(2), Income Tax Regs. The regulations also provide that "Where records are incomplete or documentary proof is unavailable, it may be possible to establish the amount of the expenditures by approximations based upon reliable secondary sources of information and collateral evidence." Sec. 1.162-17(d)(3), Income Tax Regs. This provision reflects the rule in Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930), which authorizes

the Court to make reasonable approximations of some undocumented (or not fully documented) business expenses. See Egner v. Commissioner, T.C. Memo. 1984-473. The regulations further state that in making such an approximation,

> due consideration will be given to the reasonableness of the stated expenditures for the claimed purposes in relation to the taxpayer's circumstances (such as his income and the nature of his occupation), to the reliability and accuracy of records in connection with other items more readily lending themselves to detailed record-keeping, and to all of the facts and circumstances in the particular case.

Sec. 1.162-17(d)(3), Income Tax Regs.

Madsen provided the Court only with worksheets that listed the amounts of work clothes expenses; she did not include any receipts. Her worksheets fail to identify the particular type of each item of work clothing she purchased, and at trial she was able to identify only two items of work clothing as purchased during the tax years at issue. Her testimony thus did not clarify what the items of work clothing listed in the log actually were. But we find her worksheets contain reasonable figures for work clothes expenses and also find her records for the other expense items "more readily lending themselves to detailed record-keeping" to be reliable and accurate within the meaning of the regulation.[21] Therefore, applying the Cohan rule

---

[21]The IRS does not argue that the log was required to be contemporaneous and that it was not so maintained. Thus, we do not address the issue.

as reflected in the regulation, we hold that she is entitled to a deduction for work clothes under section 162 in the amounts reflected on her worksheets, $797 for 2004 and $1,442 for 2005.

9.   Section 6662(a) Penalties

Section 6662 imposes an accuracy-related penalty equal to 20 percent of an underpayment of Federal income tax attributable to a taxpayer's substantial understatement of income tax or to a taxpayer's negligence or disregard of rules and regulations. Sec. 6662(a) and (b)(1) and (2).  Section 6664(a) defines an "underpayment" for relevant purposes as an excess of the correct tax over the sum of (a) the amount shown as tax on the return and (b) amounts not shown as tax on the return but previously assessed or collected.  Section 6662(d)(1)(A) defines a "substantial understatement of income tax" as the amount of the understatement of tax exceeding the greater of 10 percent of the tax required to be shown on the return or $5,000.  An "understatement" of tax is the excess of the tax required to be shown on the return over the amount of tax actually shown on the return.[22]  Sec. 6662(d)(A).  Negligence "includes any failure to

_____

[22]Sec. 6662(d)(2)(B) provides that a portion of an understatement attributable to a position which, although ultimately determined to be erroneous, is or was supported by "substantial authority", or has a "reasonable basis" and was adequately disclosed to the IRS, is not taken into account in determining the existence of a "substantial understatement". Neither party argues that this rule is relevant, and we hold that it does not apply under the facts of this case.

make a reasonable attempt to comply with [the tax laws]". Sec. 6662(c). Negligence has also been defined as a failure to do what a reasonable and prudent person would do under the circumstances. See Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Negligence is strongly indicated by a taxpayer's failure "to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances". Sec. 1.6662-3(b)(1)(ii), Income Tax Regs.

The accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id.

Under section 7491(c), the IRS bears the burden of production with regard to the section 6662(a) penalty and must come forward with sufficient evidence that it is appropriate to

impose the penalty.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  However, once the IRS has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is inappropriate because of reasonable cause or good faith.  Rule 142(a).  Id. at 446-447.

The IRS made substantial concessions before trial, and the Court has allowed Madsen a deduction for work clothes.  The Court finds that in the event the computations under Rule 155 establish that there is an understatement of income tax for 2005 as a result of the Court's holding and the IRS' concessions that is greater than 10 percent of the tax required to be shown in Madsen's return or $5,000, see sec. 6662(d)(1)(A), then Madsen has substantially understated her income tax for purposes of section 6662(d)(1)(A) for that year.

For purposes of determining whether Madsen had reasonable cause with respect to any portion of the underpayment in this case, the underpayment consists of two portions of disallowed deductions which we must analyze separately:  (1) the meal expense deduction attributable to Madsen's days spent in harbor and at sea, and (2) the amount Madsen deducted for what she called "incidentals".  Under the circumstances of this case, we believe that the complexity of the applicable revenue procedures and Federal Travel Regulations, and the lack of explicit guidance in those regulations regarding an employee's right to claim a

daily rate expense when her employer provided unhealthy meals, led Madsen to an honest mistake of law for which it is inappropriate to penalize her. See, e.g., <u>Van Wyk v. Commissioner</u>, 113 T.C. 440, 449 (1999); <u>Metra Chem Corp. v. Commissioner</u>, 88 T.C. 654, 661 (1987); <u>Yelencsics v. Commissioner</u>, 74 T.C. 1513, 1533 (1980); <u>Belz Inv. Co. v. Commissioner</u>, 72 T.C. 1209, 1233-1234 (1979), affd. 661 F.2d 76 (6th Cir. 1981). Accordingly, we find Madsen had reasonable cause with respect to the portion of the underpayment attributable to the disallowed meals and incidental expense rate deduction for her days in harbor and at sea. With respect to this portion, we also believe Madsen was not negligent and exercised reasonable care and prudence in attempting to determine her proper tax liability. But Madsen was negligent in reporting the amount described as "incidentals" as a deduction on her return. Also, she had no reasonable cause for claiming such a deduction.

In reaching our holdings here, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing and respondent's concessions,

<u>Decision will be entered</u> <u>under Rule 155</u>.